ARGENIS URENA
REG. NO. 62963-066
FCI COLEMAN MEDIUM
FEDERAL CORR. INSTITUTION
P.O. BOX 1032
COLEMAN, FL 33521

September ___, 2021

*July 5, 2021*

Ms. Kate Barkman
Clerk of Court
U.S. District Court
Eastern District of Pennsylvania
504 W. Hamilton Street
Allentown, PA 18101

     RE:   *Urena v. United States*
           Crim No. 5:08-cr-00553-EGS-1

Dear Ms. Barkman:

    Enclosed please find and accept for filing Movant's Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. Please submit this document to the Court.

    Thank you for your assistance in this matter.

                              Sincerely,

                              ARGENIS URENA
                              Appearing *Pro Se*

*Encl. as noted*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARGENIS URENA,
Movant,

v.                                                      No. 5:08-cr-00553-EGS-1

UNITED STATES OF AMERICA,
Respondent.

MOTION FOR COMPASSIONATE RELEASE/REDUCTION IN SENTENCE
PURSUANT TO 18 U.S.C. 3582(c)(1)(A) AND THE FIRST STEP ACT OF 2018

COMES Movant, ARGENIS URENA ("Urena"), appearing pro se, and in support of this motion would show as follows:

I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. 3582. The scope of a proceeding under 18 U.S.C. 3582(c)(2) in cases like this one is extremely limited. Dillon v. United States, 130 S. Ct. 2683, 2687 (2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." Id. However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. 3582(c)(2); see also Freeman v. United States, 131 S. Ct. 2685 (2011)(reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. Dillon, 130 S. Ct. at 2690-91.

Just recently, the Supreme Court issued a decision in Concepcion, No. 20-1650, 991 F.3d 279, in which it held the FIRST STEP ACT allows district courts to consider inter-vening changes of law or fact in exercising their discretion to reduce a sentence. Under Concepcion, this Court has the authority to consider defendant's 924(c) stacking.

Federal courts historically have exercised broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to

sentence the whole person before them.  That discretion also carries forward to later proceedings that may modify an original sentence.  District court's discretion is bounded only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence.

There is a "long" and "durable" tradition that sentencing judges "enjoy discretion in the sort of information they may consider" at an initial sentencing proceeding.  Dean v. United States, 581 U.S. 62, 66.  That unbroken tradition also characterizes federal sentencing history.  Indeed, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  Koon v. United States, 518 U.S. 81, 113.  Accordingly, a federal judge in deciding to impose a sentence "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."  United States v. Tucker, 404 U.S. 443, 446.

District courts deciding First Step Act motions regularly have considered evidence of postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties.  First Step Act movants have amassed prison records of over a decade.  See 404(a), 132 Stat. 5222 (requiring the movant to have been sentenced for an offense "committed before August 3, 2010").  Those records are naturally of interest to judges authorized by the First Step Act to reduce prison sentences or even to release movants immediately.  Likewise, when deciding whether to grant First Step Act motions and in deciding how much to reduce sentences, courts have looked to postsentencing evidence of violence or prison infractions as probative.  Moreover, when raised by the parties, district courts have considered nonretroactive Guidelines amendments to help inform whether to reduce sentences at all, and if so, by how much.  Nothing express or implicit in the First Step Act suggests that these courts misinterpreted the Act in considering such relevant and probative information.

The Supreme Court holds that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act. When deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' nonfrivolous arguments.

## II. STATEMENT OF THE CASE

On September 16, 2008, a grand jury sitting in the United States District Court for the Eastern District of Pennsylvania, Allentown Division, returned a thirteen (13) count Indictment charging Urena. See Doc. 9. Counts 1, 3, 5, 7, and 9 charged Urena with Hobbs Act Robbery, in violation of 18 U.S.C. 1951(a). Id. Counts 2, 4, 6, 8, 10, and 12 charged Urena with Using and Carrying a Firearm in furtherance of a crime of violence, in violation of 18 U.S.C. 924(c). Id. Count 11 charged Urena with Attempted Hobbs Act Robbery, in violation of 18 U.S.C. 1951(a). Id. Count 13 charged Urena with Felon in possession of firearm and ammunition, in violation of 18 U.S.C. 922(g)(1). Id.

On May 4, 2009, a Change of Plea Hearing was held and Urena entered a plea of guilty on Count 1, 2, 3, 4, 5, 7, 9, 11, and 13 of the Superseding Indictment, pursuant to a written Plea Agreement. See Docs 54-56.

On March 12, 2010, Urena was sentenced to a total term of 384 months' imprisonment, 5 years supervised release, $1,000 fine, $693.82 in restitution, and a mandatory special assessment fee of $900. See Docs 72 & 75. Counts 6, 8, 10, and 12 were dismissed on the motion of the United States. Id. A timely Notice of Appeal was filed on July 2, 2010. See Doc. 76.

On January 25, 2011, the United States Court of Appeals for the Third Circuit issued an Order dismissing Urena's appeal without prejudice, after Urena filed a motion to withdraw his appeal. See Doc. 80.

## III. DISCUSSION

As a preliminary matter, Urena respectfully requests that this Court be mindful that

3

pro se complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed.  See Higgs v. Attorney Gen. of the United States, 665 F.3d 333 (3d Cir. 2011), Estelle v. Gamble, 429 U.S. 97 (1976)(same); and Haines v. Kerner, 404 U.S. 519 (1972)(same).

A. <u>**Federal Courts Have the Jurisdiction and Power to Reduce an Existing Sentence**</u>

This Court has the power to adjust Urena's sentence.  District Courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. 3582(c)(1)(A)(i).  A district court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family circumstances.  A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction.  Such reasons are present in this case.

1. <u>Historical Framework</u>

Congress first enacted the compassionate release provisions in 18 U.S.C. 3582 as part of the Comprehensive Crime Control Act of 1984.  That legislation provided that a district court could modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction.  18 U.S.C. 3582(c)(1)(A)(i).  In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court.  Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence.  Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that the statute was intended, in part, to abolish and replace federal parole.  Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term in imprisonment is justified by changed circumstances.  These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment.  S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. 3582 acts as a "safety valve" for the "modification of sentences" that

4

would previously have been addressed through the former parole system.  Id. at 121.
The provision was intended "to assure the availability of specific review and reduction
of a term of imprisonment for 'extraordinary and compelling reasons' and (would allow
courts) to respond to changes in the guidelines." Id.  Thus, sentencing courts have
the power to modify sentences for extraordinary and compelling reasons.

   2. <u>Section 3582(c)(1)(A) is not Limited to Medical, Elderly or Childcare
      Circumstances</u>

   Congress initially delegated the responsibility for determining what constitutes
"extraordinary and compelling reasons" to the United States Sentencing Commission.  28
U.S.C. 994(t)("The Commission ... shall describe what should be considered 'extraordinary
and compelling reasons' for sentence reduction, including the criteria to be applied
and a list of specific examples."  Congress provided one limitation to that authority:
"Rehabilitation of the defendant alone shall not be considered an extraordinary and
compelling reason." 28 U.S.C. 994(t).  Rehabilitation could, however, be considered
with other reasons to justify a reduction.

   In 2007, the Sentencing Commission defined "extraordinary and compelling reasons"
as follows:

   (A) Extraordinary and Compelling Reasons—Provided the defendant meets requirements
       of subdivision (2), extraordinary and compelling reasons exist under any of the
       following circumstances.

       (i) The defendant is suffering from a terminal illness.
       (ii) The defendant is suffering from a permanent physical or medical condition, or
            is experiencing deteriorating physical or mental health because of the aging
            process, that substantially diminishes the ability of the defendant to provide
            self care within the environment of a correctional facility and for which
            conventional treatment promises no substantial improvement.
       (iii) The death or incapacitation of the defendant's only family member capable of
             caring for the defendant's minor child or minor children.
       (iv) As determined by the Director of the Bureau of Prisons, there exists in the
            defendant's case an extraordinary and compelling reason for purposes of
            subdivision (1)(A).  USSG 1B1.13, Application Note 1.

   As we will see, with the passage of the First Step Act, subparagraph (iv) is no longer
limited by what the BOP decides is extraordinary and compelling.

   Historically, the BOP rarely filed motions under 3582(c)(1)(A), even when the inmates
met the objective criteria for modification.  See U.S. Dep't of Justice Office of the

Inspector General, The Federal Bureau of Prisons Compassionate Release Program (Apr. 2013). The Office of the Inspector General also found that the BOP failed to provide adequate guidance to staff on the criteria for compassionate release, failed to set time lines for review of compassionate release requests, failed to create formal procedures for informing prisoners about compassionate release, and failed to generate a system for tracking compassionate release requests.  Id. at i–iv.

Congress heard those complaints and in late 2018 enacted the First Step Act.

### 3.  The First Step Act

The First Step Act, P. L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release.  Id. at 603.  Now, instead of depending upon the BOP to determine an inmate's eligibility for extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant."  A defendant can file an appropriate motion if he or she has exhausted all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. 3582(c)(1)(A).  The purpose and effect of this provision is to give federal courts the ability to hear and resentence a defdendant even in the absence of a BOP motion.  Congress labeled this change "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018).  Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018).  In the House, Representative Nadler noted that the First Step Act includes "a number of very positive changes, such as ... improving application of compassionate release, and providing other measures to improve the welfare of federal inmates." 164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction.  Judicial authority

is no longer limited to cases that have the approval of the BOP.

### 4. Urena Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, Section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

On March 11, 2021, Urena filed a request for compassionate release to the acting warden at FCI Coleman Medium. See Exhibit 1. More than 30 days have lapsed and Urena has not received a response yet. Because the BOP failed to file a motion on Urena's behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. 3582(c)(1)(A).

### B. Urena Has "Extraordinary and Compelling Reasons" for Compassionate Release

The principles of Compassionate Release for Urena's early release. As discussed above, the principles for release are no longer limited to BOP guidelines; federal courts have the power to determine what constitutes extraordinary and compelling circumstances.

### 1. 924(c) Stacking

Section 403 of the Act eliminates the so-called "stacking" of 18 U.S.C. 924(c)(1)(A) penalties. Section 924(c) provides for various mandatory consecutive penalties for the possession, use, or discharge of a firearm during the commission of a violent felony or drug offense. However, for a "second or subsequent conviction" of 924(c), the mandatory consecutive penalty increases to 25 years.

Now, under the Act, to avoid such an absurd and draconian result, Congress has clarified that the 25-year mandatory consecutive penalty only applies "after a prior conviction under this subsection has become final." Thus, the enhanced mandatory consecutive penalty no longer can be applied to multiple counts of 924(c) violations.

In light of the "First Step Act" (FSA) of 2018, and its "clarification" of Section 924(c) of Title 18, United States Code, Urena would not be subject to "stacked" punishment for the "second and subsequent" 18 U.S.C. 924(c) counts. At this stage of the proceedings,

7

Urena would invite the District Court to take into consideration that the "FSA of 2018" made a "clarifying" change to 18 U.S.C. 924(c) that clearly indicates that a defendant who faces multiple 18 U.S.C. 924(c) conviction in a single proceeding would not be subject to "stacked" punishment, i.e., 5 years for the first 924(c) and 25 years for each subsequent 18 U.S.C. 924(c) conviction.  Indeed, Congress in clarification of Section 924(c) (1)(C) of Title 18, United States Code, amended in the matter preceding clause (i) by striking "second" or subsequent conviction under this subsection and inserting "violation of this subsection            that occurs after a prior conviction under this subsection has become final."  Clearly Congress "clarified" the meaning of the phrase "second and subsequent" therein Section 924(c) and in doing so made clear that Title 18 U.S.C. 924(c) offenses charged in a single indictment and adjudicated in a single proceeding could not be considered "second and subsequent" to the first 18 U.S.C. 924(c) offense charged.

Example: Contemplates five-year mandatory minimum terms for using, carrying, or possessing a firearm in furtherance of a crime of violence or drug trafficking offense. Higher mandatory minimums apply depending on other factors such as whether the firearm was brandished (seven years) and whether the firearm was a machine gun (30 years) among others.

| 924(c) Counts of Conviction in the Same Indictment | BEFORE the First Step Act | AFTER the First Step Act |
|---|---|---|
| 1 Count | Mandatory minimum of 5 years | Mandatory minimum of 5 years |
| 2 Counts | Mandatory minimum of 5 + 25 = 30 years | Mandatory minimum of 5 + 5 = 10 years |
| 3 Counts | Mandatory minimum of 5 + 25 + 25 = 55 years | Mandatory minimum of 5 + 5 + 5 = 15 years years |
| 4 Counts | Mandatory minimum of 5 + 25 + 25 + 25 = 80 years | Mandatory minimum of 5 + 5 + 5 + 5 = 20 years |

Effective date of these changes:  The Act provides that the amendments to section 924(c) shall apply to any offense that was committed before the date of enactment of this Act.

If sentenced today, Urena would receive a substantially less harsh sentence for the

same criminal conduct. He therefore requests this Court order a hearing to impose a reduced sentence under the FSA's applicable statutory range, i.e., the current statutory penalties. Urena requests this Court order an updated presentence report so that his sentencing guidelines may be recalculated in accordance with law. At such a hearing, all the relevant statutory sentencing factors under 18 U.S.C. 3553(a) will be addressed in order to achieve a sentence that is sufficient but not greater than necessary.

In effect, Section 403 of the First Step Act should dictate a term of 7 years on Counts 2 and 4 (for 924(c) counts). Here, a sentence reduction to reflect Urena's new Guidelines range is in the interests of justice and furthers the purposes set forth in 18 U.S.C. 3553(a).

In United States v. McCoy, 981 F.3d 271, 287 (4th Cir. 2020), the Fourth Circuit considered a question substantially similar to the one we now face: whether it is permissible for district courts, at step one of 3582(c)(1)(A)'s test, to consider the First Step Act's elimination of "sentence-stacking" under 18 U.S.C. 924(c), even though Congress chose not to make that change retroactive to all defendants who received stacked sentences prior to the First Step Act. McCoy, 981 F.3d at 284-87. The Fourth Circuit concluded that it was permissible for district courts to "treat as 'extraordinary and compelling reasons' for compassionate release the severity of the defendant's 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act." Id. at 286. The Fourth Circuit emphasized, however, that it was not the length of the original sentences alone that constituted "extraordinary and compelling reasons." Rather, the Fourth Circuit, noted the judgments before it "were the product of ... full consideration of the defendants' individuals circumstances," including, but not limited to, their 924(c) sentences. Id. Those circumstances included "the defendants' relative youth ... at the time of their offenses," the amount of time each defendant had already served on their original sentences, the defendants' "excellent institutional records," and the "substantial steps toward rehabilitation" taken by the defendants. Id.

C. Recidivism Risk Level

1. Programming and Rehabilitation

Urena is no longer the same young, immature, reckless, rash, and irresponsible young man who lacked guidance and did not know who he was or where he was going.  Today Urena is a middle aged man who has matured and grown into a completely different person than what he used to be.  As is evidenced by Urena's chronological disciplinary record (see attachment), when he was first admitted into the BOP in his early twenties, he at first was having constant problems that caused him to be written up and sent to the S.H.U. However, as time went by, the nature of the infractions became less severe, and the frequencies of the infractions started to dissipate until they finally became non-existent and a thing of the past in his life.  Urena's last incident report was on November 24, 2014, for being insolent to a staff member.  Two years after said incident, on June 27, 2016, Javier Mouriz, PhD, Challenge Program Coordinator, put the following on record,

> My assessment of his behavior on that day was out of character for him and reflected less of an insolent attitude than it did his inability to cope with the fact his opinion was not considered.  Since then, Inmate Urena has worked to rehabilitate his reputation. He has not received any more incident reports and has demonstrated the characteristically polite demeanor he usually presented prior to the incident.  As a show of confidence in his on-going change/rehabilitation, I recommended him as the orderly for the Psychology Department and he has been working in that role for months and doing an excellent job.  While in prison, Inamte Urena's disciplinary record shows several instances of fights, assaults, refusing to obey orders, and insolence.  Most of these occurred early in his sentence and does not reflect the attitudinal, spiritual, and behavioral change he has made.  Despite the last incident report for insolence involving the treatment specialist and others noted, I can tell you inmate Urena's current demeanor and character are not consistent with the record.  He has made important changes which he has now sustained for over two years.  The change is mostly associated with his Christian faith and the tenets to which he adheres which are related to inter-personal harmony and respect.  He is a regular attendee in faith services and it is apparent he has taken this aspect of his life seriously.  In addition, Inmate Urena has completed Drug Education and obtained a GED while in prison.  He has also taken courses in electricity, nutrition, paralegal, and custodial maintenance.

See attachment.

As of the time of this writing, July 1, 2022, Urena has been infraction free for over eight years now.  Not only has Urena been infraction free, but he has also taken it a step further and completed several programs in an effort to continue his consistent and steady growth and development.  As can be seen by his Individualized Needs Plan-Program

Review (see attachment), urena has participated and completed programs and courses such as: Non-Residential Drug Treatment, Drug Education, Relapse Prevention, Responsible Thinking, Managing My Life, Threshold (a faith based program that combines drug and criminal thinking treatment), Financial Peace University, and much more.  In one program Urena participated in, the Residential Challenge Program, his Specialty Treatment Program Specialist had the following to say,

> Inmate Urena was seen today for a 60 day review.  His progress can be summarized as very good.  He participates actively in groups and in morning meeting.  He exhibits the eight attitudes of change on a daily basis.  He encourages other inmates to do the same in public during the morning meetings and in the group setting.  He had no attitude checks and his room and locker have been found maintained properly every time when search (of) cells were completed.

See attachment.

Urena has also obtained his GED and completed post-secondary education with Stratford Career Institute to become a certified Legal Assistant/Paralegal (see attachment).  Urena is co-author of this petition.  After obtaining his GED, Urena for a number of years went back to the Education Department and worked as a GED tutor to help other inmates obtain their GED as well, which resulted as stated by staff member Mr. E. Avila, GED Teacher,

> He received many certificates highlighting his consistent effort to help other inmates achieve important educational goals.

See attachment.

Urena has also met his financial obligations and paid all his fines, fees, restitution, and has saved over $10,000.00 in his pre-release account to prepare for his one day eventual release (see attachment).  In addition to the already mentioned Paralegal certification, Urena has also learned the trade of leathercraft in which he learned to make handbags, backpacks, wallets, belts, etc., which he does after work and has been succeeding in for over 7 years.  But one of Urena's most proudest achievements has been in his learning of the computer softwares SAP, Foxit Reader (for PDF files), Microsoft Excel, and Microsoft Word.  Softwares he uses on a daily basis in his current job as a Project Management clerk for the Federal Prison Industries (Unicor) in which he has maintained employment since August 23, 2016 (see attached paystub).  Before his retirement,

11

staff member Norman Reid, Deputy Chief Project Management, had the following to say,

Mr. Urena has shown a high degree of professionalism and work ethic in his role as a Project Management Clerk working for the Federal Prison Industries (Unicor). He is detail oriented and highly proficient in Microsoft Office Software applications Word, Excel and Business Software application SAP. His responsibilities include but not limited to, creating, loading into SAP and verifying Bill of Material (BOMs) for space plan designers and our Unicor customers. Mr. Urena always strive for excellence and has no problem taking on difficult task. He is a problem solver and always willing and ready to share his expertise with others around him. In an effort to provide documentation of Inmate Urena's re-entry efforts, please see the below information for his file. SAP is used by many companies in communities worldwide. The training and experience UNICOR has provided will enable this inmate to seek employment in any number of companies that use "SAP." Since August 2016, Inmate Urena has been working with "SAP" and is proficient in all aspects of its software.

See attachment.

And Chief Project Manager, Jennifer Telfare, shared the following:

Inmate Urena has worked for the Project Management area for over 4 years. He works well with others and does a great job of paying attention to detail. He is often called upon to assist with complex projects. He takes pride in ensuring his work is completed correctly and that Unicor is getting the best value. In addition to working as an inmate clerk in the project management area, Inmate Urena can be found assisting the inmate contracting clerks or working on the factory floor assisting with getting jobs completed. He is very flexible and will volunteer when help is needed.

See attachment.

## 2. Release Plan

Urena also has strong family ties which he has maintained over the years by staying in constant communication with his grandmother, mother, brothers, cousin, niece, friends, and other loved ones via visits, phone calls, E-mails, and letters.

While on the subject of family ties, Urena would like the Court to consider that all throughout his childhood and adult life, Urena's mother, grandmother, and great aunt (grand mother's sister) came together to raise him and his three siblings due to his mother being a single mother who was struggling to raise 4 little boys on her own. This created a situation in which the boys in essence had the equivalent of three mothers who they adored and loved deeply. All throughout Urena's 15 years of incarceration, Urena's grand-mother and great aunt have been hoping, praying, and yearning that Urena would make it home before they passed on from this life. Unfortunately though, just recently back in December of 2021, Urena's great aunt, Nora Pena, died as a result of pancreatic cancer



Urena' Niece, Urena's Mother, Urena, Urena's Grandmother

and never received the opportunity to see her hope realized.  Urena's grandmother is now well-aged in her mid-eighties and is frail and weak and Urena does not know how much longer he may have with her, and he pleads with the Court to please afford him the opportunity to make the most of what may be left.

If released, Diosmary Tolentino, Urena's mother, is more than willing to allow Urena to move in with her at 730 N. Penn St., Allentown, PA 18102, where she will provide for his needs until Urena is able to provide for himself.  In Allentown, PA, where Urena will be living, there are multiple factories and temp agencies in the surrounding areas which hire ex-convicts and would be eager to hire someone with the skill set Urena has obtained while working for Federal Prison Industries.  Urena has the following to say regarding this topic:

> If released, I plan on using the skill-set and work ethic I have acquired in Unicor (Federal Prison Industries) to get a job in a similar field doing the same.  While I apply and wait for the ideal job, I have no problem taking a job working as a laborer, janitor, dish washer, etc. to hold me over until then.  Also I plan on enrolling into community college; something I am eager to do as I so look forward to furthering my studies in law, financial technical analysis, real estate, and music theory.  Studies I have started in here and have been working on throughout the years.

See attachment.

it is apparent from the aforementioned, that Urena has the support system and detailed plan necessary to show his readiness to re-enter society.

### D.   The 3553(a) Factors

Aside from the aforementioned, Urena has expressed deep remorse for the wrongs he committed and the victims he scared, and he has also accepted responsibility.  In a letter written to Your Honor, Urena stated the following:

> I could try and blame the situation as being a result of my young age, lack of a father figure, and negative environment I lived in.  But the truth is, although all of those things did play a part, it all came down to me being foolish, making poor choices, and not appreciating the freedom I had.  I was old and sane enough to know better, but still I chose to do wrong and as a result, I got exactly what I deserved: A stiff and severe punishment.  Something I unfortunately admit I needed at the time to wake me up if I was ever to have any hope at a future.

> I took the tools available to me and put them to use to rehabilitate myself and give me the best possible shot at the future.  A future that wants no parts of my troubled past, a past I once again say I am completely ashamed of.  A past I truly and genuinely

13

wish I could take back and undo.  Victims I wish I could un-scare, hearts I wish I could
unbreak (my family's), and more.

See attached letter.

Although Urena stated that he deserved a stiff and severe punishment, he while being
interviewed for his 60-day review while in the Challenge Program stated the following,
"... I deserved what I got, maybe not such a lengthy sentence, but I deserved it."  (See
attached 60-day review

The above-statement shed light on the fact that while Urena's conduct was undoubtedly
extremely serious, the 32-year sentence mandated by the law at the time of his sentencing
didn't fit his crime, and Congress has since clarified that it never intended the huge
sentence Mr. Urena received.  This should lead the Court to consider the sentences imposed
on others in similar circumstances in order to avoid unwarranted sentencing disparity.
Urena's sentence far exceeds what defendants convicted of 924(c) counts receive today.
Indeed, it even exceeds what many defendants convicted of murder receive today-even though
none of the Hobbs Act Robberies resulted in any physical injuries.  See U.S. Sent'g Comm'n,
2017 Sourcebook of Federal Sentencing Statistics, Table 14 (stating that the average prison
sentence imposed nationally for murder in federal court is approximately 18.1 years for
all offenders and that, for first-time offenders, the average sentence is even lower,
about 15.6 years).

Not only did none of the Hobbs Act Robberies resulted in any physical injury, but
in one instance Urena actually returned the money he had confiscated from one of the
employees while committing the robbery after she pleaded for him to return it because
she needed it for rent.  (See sentencing Transcript)

This shows that Urena was not out to hurt anyone and had the potential to be reached,
which today he has.  It is safe to say that the over 15 years (183 months) that Urena
has already served is sufficient to satisfy the need to provide just punishment, promote
respect for the law, afford general deterrence and is not greater than necessary.  It does
so because it falls within the range Urena would be sentenced to today if he were to be
sentenced for the same exact violations of 924(c), and it continues to send a strong

message of deterrence to anyone considering engaging in the same conduct that led to Urena's convictions. It also promotes respect for the law to honor the legislative intent of Congress and give Urena, who has done absolutely everything in his power to make amends for his past actions, a second chance.

Finally, the combination of factors, length of time already served, post-sentencing rehabilitation, and the changing sentencing landscape justify granting compassionate release to Urena. Else, it would result in unwarranted sentencing disparities among similarly situated defendants. More so, his BOP record does not show that he is a threat to public safety.

<u>CONCLUSION</u>

For the above and foregoing reasons, Urena prays this Court would consider his Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A) and the First Step Act of 2018, based upon the fact that he has exhausted available administrative remedy and he has met the "extraordinary and compelling reasons" requirement. Urena has already served a sentence longer than what would be imposed today for the same conduct. Remaining in prison would only exacerbate the sentencing disparity created by a sentencing practice which Congress ended with the FSA by clarifying its intent from the beginning. Urena prays that this Court finds that the 3553(a) factors weigh in favor of reducing his sentence to time served.

Dated this _5_ day of July, 2022.

Respectfully Submitted,

ARGENIS URENA
REG. NO. 62963-066
FEDERAL CORRECTIONAL COMPLEX-
MEDIUM
P.O. BOX 1032
COLEMAN, FL 33521

## CERTIFICATE OF SERVICE

I hereby certify that on July _5_, 2022, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A) and the First Step Act of 2018 via U.S. Mail, postage prepaid, to Robert A. Zauzmer, Assistant U.S. Attorney at U.S. Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106-4476.

By: _____

ARGENIS URENA

16

<u>EXHIBIT 1:</u>
"Administrative Remedies"

SEP 98
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISON

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Acting Warden | 3/11/21 |
| FROM: | REGISTER NO.: |
| Argenis Urena | 62963-066 |
| WORK ASSIGNMENT: | UNIT: |
| Unicor - Project Management | B-3 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

Request for motion to be filed on my behalf to the Eastern District

of Pennsylvania, Philadelphia under section 3582 (c)(1)(A)

"Extraordinary and Compelling Reasons" compassionate release, U.S.S.G

§§ 1B1.13, Application note 1(A)(2007).

_A. Urena_

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

d Copy - File; Copy - Inmate
Form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94.

Before completing this application, please review Program Statement 5050.50, Compassionate Release/Reduction in Sentence (RIS), available in the law library.

## REDUCTION IN SENTENCE APPLICATION

NAME: Argenis Urena          REG No. 62963-066      Date: 3/11/21

WHO IS YOUR PHYSICIAN (circle):   Franco   Li   Bonnet-Engebretson   Venuto

Choose **One** Criteria: You can only apply under one criteria.

Extraordinary/Compelling Circumstances:
- [ ] Medical Circumstances:
  - [ ] Terminal Medical Condition – Terminal Diagnosis with 18 months or less life expectancy.
  - [ ] Debilitated Medical Condition -- Illness that has you partially (50%) or completely (100%) disabled.

- [ ] Elderly Inmates with a Medical Condition:
  - [ ] "New Law" Elderly Inmates – Have to have served 30 years of a sentence.
  - [ ] Elderly with Medical Conditions – 65 yrs. old or older, a deteriorating medical condition, served 50% of your sentence.

- [ ] Elderly Inmates without a Medical Condition: - 65 yrs. old or older, Served 10 yrs. or 75% of your sentence (which is greater)

- [ ] Death or Incapacitation of the Family Member Caregiver of an inmate's dependent child: -provide verifiable documentation the child is "suddenly" without a caretaker, the family member is in an incapacitated state and is unable to care for the child.
- [ ] Incapacitation of a Spouse or Registered Partner: -Provide verifiable medical documentation of incapacitated state.

- [x] Other:-Extraordinary and Compelling Circumstance

## To be filled out by Inmate:

Briefly describe your medical condition or extraordinary and compelling circumstance:

924(C) WAS AMENDED BY THE FIRST STEP ACT. THIS WOULD HAVE CHANGED THE PLEA-HEARING; COMBINED WITH MY REHABILITATION MAKES THIS EXTRAORDINARY.

If you have applied before, has anything changed in your medical condition since your last application? __N/A__

Proposed Release Plan (**must have ALL of the following**):

Name and contact information of who you will live with: ANTHONY URENA

When was the last time you spoke to this person concerning your release plan? MARCH 2021

Is this person willing to care for you? YES

Address of where you will be living: PALM BAY, FLORIDA

Where will you receive your medical treatment (if applicable)? N/A

How will you pay for your treatment (if applicable)? N/A

Additional Comments: _____

_____

_____

_____

Rev 3/20

EXHIBIT 2:

A.  Individualized Needs Plan - Program Review

B.  Legal Assistant/Paralegal Certificate and Transcript

C.  Inmate Disciplinary Date - Chronological Disciplinary Record

D.  Character References

E.  Urena's Letter to Judge

F.  Urena's Pay Stub at UNICOR as Project Management Clerk

G.  Receipt of Account Balance: $10,000.00

H.  Urena's Resume



**Individualized Needs Plan - Program Review   (Inmate Copy)**

SEQUENCE: 01497020

Dept. of Justice / Federal Bureau of Prisons

Team Date: 02-08-2021

Plan is for inmate: URENA, ARGENIS   62963-066

| | | | |
|---|---|---|---|
| Facility: | COM COLEMAN MED FCI | Proj. Rel. Date: | 10-27-2034 |
| Name: | URENA, ARGENIS | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 62963-066 | DNA Status: | CAA02513 / 05-25-2011 |
| Age: | 36 | | |
| Date of Birth: | 07-30-1984 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COM | PSY CLERK | PSYCHOLOGY CLERK | 01-14-2019 |
| COM | U-PM1 | UNICOR PROJECT MANAGEMENT | 02-07-2019 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COM | ESL HAS | ENGLISH PROFICIENT | 01-03-2011 |
| COM | GED HAS | COMPLETED GED OR HS DIPLOMA | 10-25-2010 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| COM | C | SPANISH THRESHOLD PARTICIPANT | 05-28-2019 | 05-29-2019 |
| COM | C | VOCALS CLASS | 10-29-2018 | 03-07-2019 |
| COM | C | ADVANCED PIANO | 10-29-2018 | 12-04-2018 |
| COM | C | BEGINNING PIANO | 09-05-2018 | 10-29-2018 |
| COM | C | VT MICROSOFT CLASS | 07-23-2018 | 09-28-2018 |
| COM | C | REENTRY INFORMATION | 03-01-2018 | 06-01-2018 |
| COM | C | COMPONENT #6 RE-ENTRY INTRO | 07-16-2017 | 09-15-2017 |
| COP | C | RPP 1 2 3 4 5 6 THRESHOLD | 05-20-2015 | 12-01-2015 |
| COM | C | HEALTH/NUTRITION | 05-30-2017 | 08-11-2017 |
| COM | C | DRIVERS LICENSE COURSE | 07-18-2017 | 07-18-2017 |
| COM | C | BODY COMPOSITION CLASS | 03-24-2017 | 05-30-2017 |
| COM | C | PERSONAL MASTERY | 02-03-2017 | 04-03-2017 |
| COM | C | RESUME WRITING PROGRAM--EDUC | 08-08-2016 | 10-05-2016 |
| COP | C | BEGINNING YOGA CLASS | 05-13-2016 | 07-13-2016 |
| COM | C | RPP HEALTH/NUTRITION #1 | 07-06-2016 | 07-06-2016 |
| COP | C | POST SECONDARY EDUCATION | 12-01-2014 | 08-19-2015 |
| COP | C | JOB FAIR INTERVIEW | 07-07-2015 | 07-21-2015 |
| COP | C | RE-ENTRY BUSINESS CLASS | 11-19-2014 | 01-28-2015 |
| COP | C | HEALTH/NUTRITION CLASS | 10-01-2014 | 10-13-2014 |
| COP CHG | C | INTRO TO ELECTRICITY | 02-27-2014 | 06-19-2014 |
| COP | C | RELAPSE PREVENTION | 09-05-2013 | 09-16-2013 |
| COP | C | ADVANCED LEATHER CLASS | 07-10-2013 | 09-10-2013 |
| COP | C | INTERMEDIATE LEATHER CLASS | 06-03-2013 | 07-15-2013 |
| COP | c | BEGINNING LEATHER CLASS | 03-18-2013 | 06-05-2013 |
| COP | c | FINANCIAL PEACE UNIV (ACE) | 08-30-2012 | 02-14-2013 |
| COP | C | MANAGING MY LIFE | 12-27-2012 | 01-03-2013 |
| COP | C | RESPONSIBLE THINKING | 12-10-2012 | 12-26-2012 |
| COP | C | FIELS MAINTENANCE CLASS | 10-15-2012 | 12-19-2012 |
| COP | C | TUTOR TRAINING | 12-04-2012 | 12-04-2012 |
| COP | C | TUE-WED 7:30-3:30 VT CUST MAIN | 04-19-2012 | 09-14-2012 |
| COP | C | RPP HEALTH/NUTRITION #1 | 05-15-2012 | 05-15-2012 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

*** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***

## Current Care Assignments



### Individualized Needs Plan - Program Review   (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: URENA, ARGENIS   62963-066

SEQUENCE: 01497020

Team Date: 02-08-2021

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 06-27-2011 |
| CARE2 | STABLE, CHRONIC CARE | 04-13-2012 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 06-23-2011 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 10-27-2010 |
| YES F/S | CLEARED FOR FOOD SERVICE | 10-27-2010 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| DAP NO INT | DRUG ABUSE PROGRAM NO INTEREST | 08-18-2016 |
| ED COMP | DRUG EDUCATION COMPLETE | 07-12-2012 |
| NR COMP | NRES DRUG TMT/COMPLETE | 07-03-2018 |

**FRP Details**

Most Recent Payment Plan

FRP Assignment:   COMPLT   FINANC RESP-COMPLETED   Start: 08-19-2018

Inmate Decision:   AGREED   $257.96   Frequency: SINGLE

Payments past 6 months:   $0.00   Obligation Balance: $0.00

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $900.00 | $450.00 | IMMEDIATE | EXPIRED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 3 | REST NV | $693.82 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | FINE | $1,000.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

**Payment Details**

Trust Fund Deposits - Past 6 months:   $ N/A        Payments commensurate ?   N/A

New Payment Plan:   | ** No data ** |

**Progress since last review**

Currently participating in the Release Preparation Program. No participation in any vocational classes. Maintained a work assignment in UNICOR.

**Next Program Review Goals**

Participate in at least one vocational class of choice by August 2021. Maintain a work assignment in UNICOR thru August 2021. Continue to participate in the Release Preparation program thru August 2021.

**Long Term Goals**

Complete at least one vocational class of choice by February 2022. Maintain clear conduct thru February 2022. Complete the Release Preparation Program by August 2025.

**RRC/HC Placement**

No.

Management decision - Will review 17-19 months prior to release..

**Comments**

RRC will be reviewed 17-19 months from release.

Account Balance:  $2,091.52
Pre-Release Balance:  $2,000.00
Available Balance:  $64.38
National 6 Months Deposits:  $2,389.31
National 6 Months Withdrawals:  $2,021.75



**Individualized Needs Plan - Program Review   (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: URENA, ARGENIS  62963-066

SEQUENCE: 01497020
Team Date: 02-08-2021

Name: URENA, ARGENIS
Register No.: 62963-066
Age: 36
Date of Birth: 07-30-1984

DNA Status: CAA02513 / 05-25-2011

Inmate   (URENA, ARGENIS. Register No.: 62963-066)

Date

Unit Manager / Chairperson

Case Manager

Date

Date

# Stratford Career Institute

Mount–Royal, QC

This is to certify that

## Argenis Urena

has completed a course of studies in

## Legal Assistant/Paralegal

and, in testimony whereof this

## DIPLOMA

### with highest honors

is awarded

In witness whereof we have hereto subscribed our names and affixed
the academic seal of the school on this 22nd of August 2016

Executive Director

Registrar







**STRATFORD CAREER INSTITUTE**

Mailing/Shipping Address:
1 Champlain Commons, Unit 3, PO Box 1560
St. Albans, VT 05478-5560

Main Office:
8675 Darnley Road, Mount-Royal, QC H4T 1X2
1-800-435-5338

# *Official Transcript of Grades*

Argenis Urena
Coleman FL 33521

Date: March 19, 2021

Student Number: F573590

Overall Grade: 99%

## Legal Assistant/Paralegal Program

### Session I

| | | |
|---|---|---|
| BHC1-A | The Law Office Setting; Duties of the Paralegal; Federal and State Court Systems | 100 % |
| BHC1-B | Legal Writing and Proofreading; Neutral Memorandum; Motions and Briefs; Overview of the Discovery Process | 100 % |
| BHC1-C | Civil and Criminal Cases Defined; The Phases of a Lawsuit; Landlord/Tenant Leases; Lease Agreement; Home Purchases and Sales | 100 % |
| BHC1-D | Medical Records; Legal Research Tools; Sources of Information; The Job Search; Resume and Application Letter | 100 % |

### Session II

| | | |
|---|---|---|
| BHC2-A | Civil Litigation Law Firms; Billable Hours and Fee Arrangements; Attorney Client Privileges; The Framework of a Civil Lawsuit | 100 % |
| BHC2-B | Negligence and Its Defense; Privilege; Interrogatories; Objections; Request for Production of Documents; Subpoenas; Deposition Summaries; Request for Admissions | 90 % |
| BHC2-C | Expert Witnesses and Trial Preparation; Initial Case Development; Trial Technology and Demonstrative Evidence; Medical Records; Closing Argument | 100 % |
| BHC2-D | Trial Evidence; Arbitration; Mediation; Summary Jury Trial; Pre-trial Conferences; Releases; Joint Tortfeaser Release; Post-trial Motions and Appeals | 100 % |

### Session III

| | | |
|---|---|---|
| BHC3-A | Federal and State Court, Venue and Jurisdiction, Bills of Rights, Exclusionary Rule, Fifth Amendment, Double Jeopardy, Right to Counsel, Eighth Amendment | 100 % |
| BHC3-B | Criminal Prosecution, Discovery, Court Pleadings and Motions, Trial and Sentencing, Punishment, Mens Rea, Model Penal Code, Actus Reus, Inchoate Crimes, Parties to a Crime | 100 % |
| BHC3-C | Statutory Law, Examples of Defenses, Victims of Crimes, Examples of Abuse, Victims, Rights, Compensation and Restitution, Sentencing Hearings | 100 % |
| BHC3-D | Jury Selection, Opening Statements, Trial Evidence, Privilege, Competency, Hearsay Rule, Appeals, Habeas Corpus, Expungement and Pardons, the First Amendment | 100 % |

Continued on page 2...



**Argenis Urena**
Student Number:  F573590

**Session IV**

| | | |
|---|---|---|
| BHC4–A | Sentences and Paragraphs; Word Selection and Usage; Spelling; Numbers; Formal Writing Conventions; Grammar; Subject/Verb Agreement; Verb Tense and Superfluous Verbs; Parallel Construction; Punctuation | 100 % |
| BHC4–B | Legal Citation; Primary and Secondary Authority; Rules of Citation; Computer and Internet Research Web Sites; Writing Process for Effective Legal Writing; Legal Research Suggestions | 96 % |
| BHC4–C | Legal Correspondence Types and Components; Legal Research Memorandum; Prewriting Stage; Sections of the Legal Research Memorandum; General Considerations; Trial Court Briefs; Appellate Court Briefs | 96 % |

* *   End of Transcript   * *

Overall Grade: 99 %
An average overall grade of 70% is required to successfully complete this program.

Average clock hours: 300

Date of Graduation: August 22, 2016

_Seal of Authenticity_

Registrar

```
   COMBC         *         INMATE DISCIPLINE DATA        *      07-04-2022
PAGE 001         *      CHRONOLOGICAL DISCIPLINARY RECORD  *      14:40:24

REGISTER NO: 62963-066 NAME..: URENA, ARGENIS
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 07-04-2022
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2653367 - SANCTIONED INCIDENT DATE/TIME: 11-21-2014 0645
UDC HEARING DATE/TIME: 11-24-2014 0845
FACL/UDC/CHAIRPERSON.: COP/J/K/W PEREZ
REPORT REMARKS.......: UDC FOUND INMATE GUILTY OF CHARGE 312, LOSS OF VISIT FOR
                       30 DAYS
   312  BEING INSOLENT TO STAFF MEMBER - FREQ: 1
        LP VISIT   / 30 DAYS / CS
        COMP:   LAW:    TO DETER INMATE BEHAVIOR
                        RESTORED ON 12-24-2014.
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2411594 - SANCTIONED INCIDENT DATE/TIME: 02-18-2013 2200
DHO HEARING DATE/TIME: 02-26-2013 1345
FACL/CHAIRPERSON.....: COP/M./CHANEY
REPORT REMARKS.......: PLRA INMATE; DHO FINDS INMATE GUILTY OF REFUSING AN
                       ORDER. LACK OF EVIDENCE TO SUPPORT 218 CHARGE
   307  REFUSING TO OBEY AN ORDER - FREQ: 2
        DIS GCT    / 13 DAYS / CS
        COMP:010 LAW:P
        LP COMM    / 90 DAYS / CS
        COMP:   LAW:    RESTORED: 05-26-2013
        LP PHONE   / 90 DAYS / CS
        COMP:   LAW:    RESTORED: 05-26-2013
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2411601 - SANCTIONED INCIDENT DATE/TIME: 02-18-2013 2130
UDC HEARING DATE/TIME: 02-20-2013 1015
FACL/UDC/CHAIRPERSON.: COP/J/K/R.NARVAEZ
REPORT REMARKS.......: BASED ON INMATE GUILTY PLEAD UDC FINDS INMATE GUILTY.
   305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
        LP COMM    / 60 DAYS / CS
        COMP:   LAW:    RESTORED ON 04-20-2013.
        LP PHONE   / 60 DAYS / CS
        COMP:   LAW:    RESTORED ON 04-20-2013.
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2134220 - SANCTIONED INCIDENT DATE/TIME: 03-07-2011 2030
UDC HEARING DATE/TIME: 03-08-2011 1035
FACL/UDC/CHAIRPERSON.: CAA/B2 UNIT/D. COMPTON
REPORT REMARKS.......: UDC FINDS INMATE COMMITTED PROHIBITED ACTS BASED ON THE
                       STAFF STATEMENT & INMATE'S OWN ADMISSION TO LT.
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
        LP COMM    / 30 DAYS / CS
        COMP:   LAW:
        LP PHONE   / 30 DAYS / CS
        COMP:   LAW:




G0002       MORE PAGES TO FOLLOW . . .
```

```
   COMBC        *       INMATE DISCIPLINE DATA       *      07-04-2022
PAGE 002 OF 002 *   CHRONOLOGICAL DISCIPLINARY RECORD   *      14:40:24

REGISTER NO: 62963-066 NAME..: URENA, ARGENIS
FUNCTION...: PRT      FORMAT: CHRONO   LIMIT TO ___ MOS PRIOR TO 07-04-2022

--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2014896 - SANCTIONED INCIDENT DATE/TIME: 05-12-2010 1930
DHO HEARING DATE/TIME: 05-19-2010 0935
FACL/CHAIRPERSON.....: PHL/KULICK D
REPORT REMARKS.......: INMATE ADMITS FIGHTING SHABAZZ 55134-066
   201  FIGHTING WITH ANOTHER PERSON - FREQ: 1
        DIS GCT    / 27 DAYS / CS
        COMP:000 LAW:
        DS         / 30 DAYS / CS
        COMP:   LAW:
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1931722 - SANCTIONED INCIDENT DATE/TIME: 10-10-2009 1340
DHO HEARING DATE/TIME: 10-28-2009 0820
FACL/CHAIRPERSON.....: PHL/KULICK D
APPEAL CASE NUMBER(S): 563977
REPORT REMARKS.......: INMATE ADMITS ASSAULTING OMINI 61596-066
   224  ASSAULTING W/O SERIOUS INJURY - FREQ: 2 ATI: IF1 RFP: D
        DIS GCT    / 27 DAYS / CS
        COMP:000 LAW:
        DS         / 45 DAYS / CS
        COMP:   LAW:
        LP COMM    / 180 DAYS / CS
        COMP:   LAW:
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1869609 - SANCTIONED INCIDENT DATE/TIME: 05-16-2009 1215
DHO HEARING DATE/TIME: 06-17-2009 0850
FACL/CHAIRPERSON.....: PHL/KULICK D
REPORT REMARKS.......: INMATE DENIES ASSAULTING LEWIS 63376-066
   224  ASSAULTING W/O SERIOUS INJURY - FREQ: 1 ATI: IM2 RFP: D
        DIS GCT    / 27 DAYS / CS
        COMP:000 LAW:
        DS         / 30 DAYS / CS
        COMP:   LAW:
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1809577 - SANCTIONED INCIDENT DATE/TIME: 12-10-2008 1720
DHO HEARING DATE/TIME: 01-07-2009 0745
FACL/CHAIRPERSON.....: PHL/KULICK D
REPORT REMARKS.......: INMATE ADMITS
   201  FIGHTING WITH ANOTHER PERSON - FREQ: 1
        DIS GCT    / 27 DAYS / CS
        COMP:000 LAW:
        DS         / 30 DAYS / CS
        COMP:   LAW:


G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

**SENSITIVE BUT UNCLASSIFIED**



# Federal Bureau of Prisons
# Psychology Data System

**Date-Title:** 03-11-2014 - Challenge - 60 Day Progress Review

**Reg Number-Name:** 62963-066 - URENA, ARGENIS

**Author:** M. TOMASCHEK, SPECIALTY TRTMNT PROG SPECLST

**Institution:** COP - COLEMAN I USP

---

Inmate URENA was seen today for a 60 Day Review. His progress can be summarized as very good. He participates actively in groups and in the morning meetings. He exhibits the eight attitudes of change on a daily basis. He encourages other inmates to do the same in public during the morning meetings and in the group settings. He had no attitude checks and his room and locker have been found maintained properly every time when search cells were conducted.

**Problem Statement #1:**

Inmate URENA reported extensive use of marijuana, alcohol and cocaine. He reported using marijuana on a daily basis, since he was 9 y.o., and alcohol and cocaine on weekends with older brothers. This illegal activity was sustained over the course of many years until he was incarcerated. The ongoing use of marijuana negatively affected several areas of his life to include school, financial, relationships and health. He stated, when using drugs "I was concerned about unimportant stuff, not the stuff that really mattered."

**Goal #1:** Inmate URENA indicated he wants to continue living a drug-free life. He noted he wants to strengthen the skills and tactics he is currently using to maintain a drug-free lifestyle.

**Activity #1A:** While inmate URENA is attending weekly Process Group, he will be required to share his history of drug dependence in group and begin the process of learning how it was maintained and also share how he has managed to remain free from using drugs.

Inmate Urena attended weekly group and not only shared verbally with the other inmates his history of drugs dependence but also wrote an essay named "What is my "cancer"?" Due: This will remain open for additional processing.

**Activity #1B:** Inmate will learn the Philosophy Statement and he will be able to discuss how it applies to his life. Review within the next 60 days.

Inmate Urena was observed in the Community meeting reciting the Philosophy Statement. He has been teamed regarding his knowledge of the Philosophy Statement and how it applies to his life. In addition, his behavior exemplifies many of the eight attitudes as evidenced by his Responsibility, Humility, Open-Mindedness, and Willingness. Activity closed.

**Activity #1C:** Inmate URENA will, when called upon for word/phrase of the day during the Community Meeting, discuss how the word/phrase of the day applies to his drug use and his current drug-free lifestyle. If not selected for the word of the day, he will discuss this task during process group.

Inmate is continuously involved in Community Meetings, whether he participates in games, organizes them or is discussing the word/phrase of the day. If he is not engaged in any of those activities, he is volunteering to participate. Due: His participation will still be an important aspect of his treatment and will remain open for additional review.

**Problem Statement #2:** Inmate URENA is serving a thirty two years sentence for "interfering with state

commerce/armed robbery." He has acknowledged he was living a criminal lifestyle and stated, " I deserved what I got, maybe not such a lengthy sentence, but I deserve it." During his incarceration at FCC Coleman, inmate URENA has multiple incident reports for fighting and one incident report for disobeying staff's orders in 2013. Since then he has maintained clear conduct. He does not wish to live a criminal lifestyle. He has indicated he now wants to live within the rules of society and wants to abide by institutional requirements.

**Activity #2A:** Inmate URENA will share and discuss his past criminal behavior within process group. He will begin to share the reasons for his involvement in criminal behavior and why he chose to make a change. On going assignment.

Inmate Urena was observed actively participating in the group and sharing his reasons for which he desires to change. He stated his reason for change is to follow God's principles/examples, which, according to him, are like the principles espoused by the program. On going assignment. Due: Review within the next 60 days.

**Activity# 2B:** Inmate URENA will use the orientation journal to identify the attitudes he is struggling with the most and will discuss this in group. He will continue to attend educational programming and report to the process group how he is using this as a guide in following rules.

Inmate URENA identified procrastination as a big problem for him and noted this could hamper his responsibility. However, it is noted he is observed to be responsible and has learned to manage procrastination to the extent it does not interfere with his functioning. Due: Activity Closed

**Activity #2C:** Since inmate URENA was involved in a criminal lifestyle and states that he is committed to change, inmate URENA will develop a plan to enhance his emotional health. He will present this plan to the process group for feedback.

Inmate Urena developed a plan in writing about who he is vs. who he wants to be. In writing this he identified that who he was is different than who he is and he wants to be. He identified ways of achieving who he wants to be. Due: Activity Closed

**NEW ACTIVITY# 2D:** Inmate will read the book entitled "Free to be me" by Zachery Tims and for each chapter, he will write a brief summary and explain in detail what he understood of it or whether the chapter applied to him. On going activity. Due to the next 60 Day Review.

\*\*SENSITIVE BUT UNCLASSIFIED\*\*



U. S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Complex

---

*United States Penitentiary*
*P. O. Box 1023*
*Coleman, Florida 33521-1023*

June 27, 2016

To Whom it May Concern,

This letter is written on behalf of inmate Argenis Urena, Register Number 62963-066. Inmate Urena has recently filed a motion to "Vacate, Set Aside or Correct Sentence Under 28 U.S.C., Section 2255." He has requested a letter from this staff member to include as additional background in his motion.

I know of inmate Urena since June 2011 when he was designated to this correctional facility. In September 2013 he began his participation in the Challenge Program; I am the coordinator of the Challenge Program. The Challenge Program is a year-long, voluntary treatment program coordinated under the auspices of the Psychology Services Department in the Federal Bureau of Prisons. Its primary goal is to assist offenders who have a history of drug, criminal, or mental health problems in their rehabilitation by using cognitive-behavioral strategies within the context of a Therapeutic Community.

Inmate Urena's participation in the Challenge Program was initially considered good in that he was honestly addressing and changing the criminal thinking which sustained his criminal lifestyle in the community. However, In November 2014 he received an incident report for Insolence from one of the program's treatment specialists and was removed. The specifics of that incident report involved Urena giving the treatment specialist feedback/advice about how to conduct groups, information which was not accepted by the treatment specialist. After becoming displeased with the rejection of his opinion, he used insulting language to further

accentuate his viewpoint—this resulted in the incident report.   My assessment is his behavior on that day was out of character for him and reflected less of an insolent attitude than it did his inability to cope with the fact his opinion was not considered.

Since then, inmate Urena has worked to rehabilitate his reputation.   He has not received any more incident reports and has demonstrated the characteristically polite demeanor he usually presented prior to the incident.   As a show of confidence in his on-going change/rehabilitation I recommended him as the orderly for the Psychology Services Department and he has been working I that role for several months and doing an excellent job.

While in prison, inmate Urena's disciplinary record shows several instances of fights, assaults, refusing to obey orders, and insolence.   Most of these occurred early in his sentence and do not reflect the attitudinal, spiritual, and behavioral change he has made.   Despite the last incident report for insolence involving the treatment specialist and the others noted, I can tell you inmate Urena's current demeanor and character are not consistent with the record.   He has made important changes which he has now sustained for over two years.   The change is mostly associated with his Christian faith and the tenets to which he adheres which are related to interpersonal harmony and respect.   He is a regular attendee in faith services and it is apparent he has taken this aspect of his life seriously.   In addition, inmate Urena has completed Drug Education and obtained a GED while in prison.   He has also taken courses in electricity, nutrition, paralegal, and custodial maintenance.

Please feel free to include this letter of inmate Urena's progress in his motion.   As noted above, the disciplinary record is not an accurate reflection of inmate Urena's current demeanor. It is assessed his current harmonious, respectful, and polite demeanor is likely enduring and will be sustained going forward.   Please feel free to contact me regarding this letter at 352-689-6000.

Sincerely,

Javier Mouriz, Phd

Challenge Program Coordinator



UNITED STATES GOVERNMENT
FEDERAL CORRECTIONAL COMPLEX
COLEMAN, FLORIDA

April 19, 2021

To whom it may concern,

Inmate Urena, Argenis, register number 62963-066 worked in the Education Department at United
States Penitentiary I for significant periods from November 2012 through to June 2016 as a tutor for the
Literacy/GED program.  Over that period of time Mr. Urena reported to his work assignment promptly
and conducted himself in a respectful manner towards other inmates and staff.  He has received many
certificates highlighting his consistent effort to help other inmates achieve important educational goals.

Sincerely,

E. Avila
GED Teacher
Federal Complex Coleman

Inmate: Urena, Argenis #62963-066                                    04-08-2021

Mr. Urena has shown a high degree of professionalism and work ethic in his role. As a Project Management Clerk working for the Federal Prison Industries (UNICOR). He is detail oriented and highly proficient in Microsoft Office Software applications word, Excel and Business Software application SAP.

His responsibilities includes but not limited to; creating, loading into SAP and verifying Bill of Materials (BOMs) for space plan designers and our UNICOR customers. Mr. Urena always strive for excellence and has no problem taking on the difficult task. He is a problem solver and always willing and ready to share his expertise with others around him. In an effort to provide documentation of Inmate Urena reentry efforts, please see the below information for his file.

SAP™ is used by many companies in communities worldwide. The training and experience UNICOR has provided will enable this inmate to seek employment in any number of companies that use "SAP". Since August 2016, Inmate Urena has been working with "SAP" and is proficient in all aspect of its software.

As my clerk he has performed well, and some of the skills he has acquired since being here are;

1. SAP™ proficiency as it pertains to Project Management
2. Microsoft Word and Excel.
3. Design, maintenance and updating spreadsheets.
4. Duties related to Data entry.
5. Working with others and teaching new hires.

Norman Reid
Deputy Chief Project Management

NORMAN
REID

Digitally signed by
NORMAN REID
Date: 2021.04.08
14:38:02 -04'00'

Inmate Urena has worked for the Project Management area for over 4 years. He works well with others and does a great job paying attention to detail. He has extensive knowledge in the use of the Microsoft package, specifically, Word & Excel. Inmate Urena is often called upon to assist with complex projects. He takes pride in ensuring his work is completed correctly and that UNICOR is getting the best value. In addition to working as an inmate clerk in Project Management area, Inmate Urena can often be found assisting the inmate contracting clerks or working on the factory floor assisting with getting jobs completed. He is very flexible and will volunteer when help is needed.


J. Telfare
Chief Project Management

April 21, 2021

Re: Argenis Urena

Your Honor,

My name is Marlin Krishna and I am writing to you in regards to Argenis Urena's compassionate release motion. I have been a Registered Nurse for the past 12 years and I currently work as a Health & Wellness Director for a Health Center that provides free medical, dental, & mental health care to the underserved population, aged 16-24 years. Argenis Urena is my significant other and I am writing this letter in hopes to shed light on Argenis' character and ask that you please grant him compassionate release.

From the beginning of our relationship, Argenis has been forthcoming about his past and has shared every detail about his case on his own accord. He has sent me his sentencing transcripts, communication from his lawyers, and various other documents that detailed the mistakes of his past that have led to Argenis' incarceration. As I read through the documents, it is clear that I do not recognize this man, as Argenis is no longer that individual that he was long ago. It allowed me to truly see how far he has come, and appreciate the efforts he has made to become the changed man I know today. Argenis has never made excuses for his actions, instead he has expressed remorse and takes full responsibility for his actions.

Argenis and I instantly connected due to our similar childhood experiences and because of our experiences we both have a passion to help others. Argenis has expressed his detailed plans on how upon his release, he will help those that are in a similar situation that he was once in. He plans to donate his time at shelters, that once provided him a safe place, mentor those who are struggling with drug addiction, join organizations that help build shelters, volunteer at food banks, and even return to prison to provide hope to others through prayer. I believe in his passion, as it aligns with my own and look forward to the opportunity to serve those less fortunate together.

Throughout his incarceration, Argenis has worked diligently to better himself through taking courses, reading self-help books, and maintaining strong ties with his loved ones. Argenis is realistic in his growth and knows that in order to maintain the changes he has made in his behavior, attitude and spirituality, he will need to put in effort daily even after release. I fully plan to provide him the support he needs to continue on his path of growth.

Argenis attributes his success to the relationship he has built with God. I have had the opportunity to hear how God has made a change in his life, and he is always sharing his testimony with people and I have been fortunate enough to be a recipient of his story and his God. I admire his unwavering faith and truly believe God will be a contributing factor to his success when he is released.

I truly believe Argenis will be an asset to his community, a support to his family, and a productive member of society. Argenis and I not only have plans to serve our community, but we also have plans to one day get married and raise a family. I ask that you please grant Argenis Urena compassionate release so that we can have the opportunity to live out our dreams. I thank you for your time and consideration.

Sincerely,

Marlin Krishna

Dear Your Honor,

   First I would like to start by thanking you for taking the time to read and consider this letter; something I hope will shed light on the person I am today, rather than on the lost, hopeless, and wayward individual I used to be. I could try to blame my situation as being a result of my young age, lack of a father figure, and negative environment I lived in. But the truth is, although all those things did play a part, it all came down to me being foolish, making poor choices, and not appreciating the freedom I had. I was old and sane enough to know better, but still I chose to do wrong and as a result, I got exactly what I deserved: a severe and stiff punishment. Something I unfortunately admit I needed at the time to wake me up if I was to ever have any hope at a future. A future that would've been worthless to me had I not garnered the lessons this experience had to offer, and took the necessary steps to make a change; a change that did not come easy, but that nonetheless came; a change that showed me that in the same way that poor choices produce negative results, positive and calculated choices can produce good and worth having results. Results that were foreign to me as a result of my long history of the contrary; something that today I am completely ashamed of. As could be seen from my disciplinary history report, at the beginning of this sentence and for several years afterward, I was still making poor choices. But as time went on, I got sick and tired of the consequences my poor choices had brung and were continuing to bring me, so I decided that it was time to make a change. I decided that I had to do something I had never done before, because I've heard the definition of insanity is doing the same things over and over again and expecting a different result. And it was obvious that everything I had done before hand, just wasn't working and did nothing but produce pain, hurt, and misery in my life. I was tired of it; tired of breaking my mother's heart and being separated from my family and loved ones. So as I said before, I knew that I had to do something I had never done before, and that led to me building a relationship with God; a relationship that has completely transformed me from the inside out. A decision that has turned out to be the best decision I have ever made in my entire life! By applying Bible principles to my life on a daily basis, a character has been produced in me I would've never thought possible. People who have known me for my entire life cannot believe the change that has occurred in me, and it's all a result of my relationship with Jesus. But aside from that, I have also not let this opportunity I have had to rehabilitate and better myself go to waste. As could be seen by my Program Review and Disciplinary History Report, not only have I remained infraction/incident report free for almost the last 7 years, but I've also completed my GED, post secondary education as a legal assistant/paralegal (see attached transcripts), drug treatment programs, re-entry classes, faith based programs, and others including but not limited to, Microsoft courses which help me fulfill my duties as a Project Management clerk for Unicor (Federal Prisons Industries) where I work on a computer 7.25 hours a day (.45 for lunch to equal a total of 8hrs) doing a job I love and have been doing for almost 5 years now (hire date 8/23/2016, see attached paystub). I have also maintained employment through out the entire course of my incarceration, one such job was that of being a GED tutor, something I enjoyed and did for years until being transferred for good behavior to another facility. Also, I have fulfilled all of my financial obligations to the courts and have over $4.000 dollars saved in my inmate pre-release account (attached Program Review only shows $2,000, but that's because it's outdated and my case manager is not available to give me an updated copy due to the Covid pandemic. I am working on trying to get someone else to give me an updated copy, but I might not be able to do so before I send this out.). Over the years, I have also met and fulfilled every program need that was recommended by my Unit Team on my Individualized Needs Plan, and conducted myself in such a manner that my case manager went out of her way to submit a wavier (Management Variable) on my behalf to get me transferred to a facility with lesser security because she felt my behavior warranted it. Without it, the transferred would've been impossible due to my custody level. On another note, I also have my Birth Certificate, Social Security card, and valid Florida State

identification card (provided by Florida State Flow Bus) in my property ready to be turned over to me upon release. If released, I plan on using the skills set and work ethic I have acquired working in Unicor (Federal Prison Industries) to get a job in a similar field doing the same. While I apply and wait for the ideal job, I have no problem taking a job working as a laborer, janitor, dish washer, or etc to hold me over until then. Also, I plan on enrolling into community college; something I am eager to do as I so look forward to furthering my studies in law, financial technical analysis, real estate, and music theory. Studies I have started here and have been working on through out the years. With all of this said, Your Honor, I have not let the years I have been in incarcerated (14yrs) go to waste, instead I have taken this time as an opportunity to develop myself into a completely different individual than what I was when I first came in at the age of 22. I took the tools available to me and put them to use to rehabilitate myself and give me the best possible shot at the future. A future that wants no parts of my troubled past, a past I once again say I am completely ashamed of. A past I truly and genuinely wish I could take back and undue. Victims I wish I could un-scare, hearts I wish I could un-break (my family's), and more, but unfortunately I can't. But what I could say is that through my past I have learned the ways that don't and will not work, and have found the valuable lessons that my failure contained. Lessons I will never forget and use to guide me forward and share with others to hopefully save them from having to learn them the hard way. I have plans and dreams of using my experience to help others avoid make the same mistakes I made, and to make a difference in whatever community I set foot in. Because I sincerely do not want anyone else to have to experience what I have, or cause hurt and pain to anyone else. I have really changed and am no longer the same. If I were given a second opportunity at life, I would truly cherish it and make the most of it. With that I end this, and once again thank you for taking the time to read this. God bless and have a good day. Thank you!

Sincerely,

A.Urena

# UNICOR INNATE EARNING STATEMENT

REG/NAME: 62963066
ARGENIS URENA

Pay Period: 02/28/2021  Pay Date: 03/02/2021
INST: 19          FACTORY:
GRADE: GRADE1     GROUP:  CLSF
                  CREW:  CL U PM1

|        | GROSS  | TAXES | POST TAX DEDUCTIONS | NET PAY |
|--------|--------|-------|---------------------|---------|
| Curr:  | 236.09 | -     | =                   | 236.09  |
| YTD:   | 424.85 | -     | =                   | 424.85  |

**EARNINGS**

| | | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| 8010 | HOL | 1.15 | 7.25 | 8.34 |
| 8510 | REG | 1.15 | 130.48 | 150.05 |
| 9520 | LONG20 | 0.20 | 157.79 | 31.56 |
| 8525 | OT | 2.30 | 20.06 | 46.14 |

DATE COMPUTED
HIRE DATE          08/23/2016
VACATION DATE      08/23/2016
LONGEVITY MONTHS       55.00
UNICOR WORK START  08/23/2016
ACCRUED VAC HOURS      30.43
PREV. YRS VAC HOURS
UNPAID CALLOUT          0.00

STATUS 95

DEDUCTIONS/ADJUSTMENT



```
Sales Invoice  ---S.B.U.---
Coleman FCC
MEDIUM
Account No. 62963066      TF59320
- URENA, ARGENIS -
06/27/2022 07:22:53 PM TX#25826564    15
1
-------------------------------------------
BEGINNING BALANCES:
Available Balance is $43.96
Spending Limit Balance is $90.00
Account Balance is $10,243.96
===========================================
Qty  Description                  Price
===========================================
 1 HOT BEEF SUMMER S             $2.50
 1 HOT BEEF SUMMER S             $2.50
 1 TEX TOOTHBRUSH PR             $0.55
 1 DIAL DEODOR                   $1.40
 1 COFFEEMATE CREAME             $3.25
 1 MIKE & IKE ORIGIN             $1.60
 1 TOOTH BRUSH HOLDE             $0.50
 1 CLEAR SOAP DISH               $0.75

           Total              $13.05

Charge 62963066    $13.05
-------------------------------------------
Items marked with * are Local Use Only

ENDING BALANCES:
Available Balance is $30.91
Spending Limit Balance is $76.95
- Account Balance is $10,230.91 -
-------------------------------------------
         Fingerprint Verified
-------------------------------------------
Signature

*** ALL SALES FINAL ***
```

# ARGENIS URENA

 730 N PENN ST. ALLENTOWN PA 18102

## OBJECTIVE

To be a part of a reputable organization that provides steady career growth and challenges, that will allow me to utilize my leadership skills and provide valuable contribution to the success of the organization.

## EDUCATION

**GED 2010**
Northern Neck Regional Jail

**LEGAL ASSISTANT/PARALEGAL 2016**
Stratford Career Institute
Graduated with honors
Overall Grade: 99%

## EXPERIENCE

**2016-Present, Project Management Clerk, UNICOR, FCC Coleman USP-1**
- SAP Proficient as it pertains to Project Management
- Design, maintain and update spread sheet
- Perform duties related to data entry
- Train new hires on SAP, excel and data entry

**2016-2016 Orderly, Psychology Department, FCC Coleman USP-1**
- Perform routine comprehensive custodial maintenance of assigned facilities
- Properly clean and disinfect restrooms
- Remove and dispose of trash in accordance with safety protocols
- Effectively order & stock facilities

**2015-2016 Computer Technician, FCC Coleman USP-1**
- Maintained & repaired computers & equipment
- Performed basic troubleshooting of a variety of computer issues
- Provided technical support onsite
- Repaired defective parts
- Installed hardware and software systems

**2014-2016 Health & Nutrition Wellness Instructor, Recreation Department, FCC Coleman USP-1**
- Conducted weekly sessions in which participants gained the principals of how to maintain a healthy lifestyle
- Proctored pre-& post exams
- Maintained participant files and monitored attendance

**2012-2016 GED Tutor, Education Department, FCC Coleman USP-1**
- Tutored peers in GED studies & prepared peers to take GED exam
- Maintained detailed files on each individual & monitored their progress

## COMPLETED COURSES
- Computer Data Entry
- Beginner Electricity Course
- Custodial Maintenance & Environmental Services Course
- Health & Nutrition Course
- Microsoft Course
- Business Course

## PARALEGAL SKILLS:
- Legal Research
- Discovery Packages
- Legal Document Preparations
- Trial Preparation
- Motions, Contracts, Agreements
- Client interviews
- Billing & Collections
- Office & Court Procedures
- Court Calendaring

## PROFICIENT IN:
- Systems Applications and Products (using models VA02, VA05, MD04 ME23. ME52, QAWD, QM03, QM11)
- Excel
- Foxit Reader
- Adobe
- Data entry
- 60 words per minute

## BILINGUAL
- Fluent in English & Spanish

## REFERENCES
*Provided upon request*







U.S. POSTAGE PAID
PM 3-Day
COLEMAN, FL
33521
JUL 07 '22
AMOUNT
**$0.00**
R2305K139876-09

1004    18101

# PRIORITY® MAIL

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.

** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

TRACKED ■ INSURED

**FROM:**

Argenis Urena #62963-066
Federal Correction Complex Med B-3
P.O. Box 1032
Coleman, FL 33521



REC'D JUL - 8 2022





**TO:**

REC'D JUL - 8 2022

Office of the Clerk of Court
Clerk of Court
U.S. District Court
Eastern District of Pennsylvania
504 W. Hamilton Street
Allentown, PA 18101





**USPS TRACKING #**

9114 9022 0078 9809 2495 36

Label 400 Jan. 2013
7690-16-000-7948
ID: 12 1/2 x 9 1/2
P14F May 2020

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.